GARY Y. LEUNG (Cal. Bar No. 302928)
Email:  leungg@sec.gov
WENDY E. PEARSON (Cal. Bar No. 211099)
Email:  pearsonw@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Gary Y. Leung, Associate Director
Douglas M. Miller, Supervisory Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Applicant,<br><br>　　vs.<br><br>MARIANA BORTIS,<br><br>　　　　Respondent. | Case No. 2:25-cv-07732<br><br>**SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS APPLICATION FOR AN ORDER TO SHOW CAUSE AND APPLICATION FOR AN ORDER COMPELLING COMPLIANCE WITH ADMINISTRATIVE SUBPOENA** |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  STATEMENT OF FACTS ...................................................................................2

    A.  The SEC's Investigation of Ateliere's Securities Offering..................2

        1.  The SEC's August 19, 2024 formal order of investigation .......2

        2.  The SEC's prior enforcement action against Ateliere's corporate predecessor OwnZones ...............................................2

        3.  Ateliere's Unregistered and Potentially Fraudulent Securities Offering ......................................................................................4

        4.  Bortis's evident involvement in Ateliere's securities offering ..5

    B.  The SEC's February 5, 2025 Subpoena to Bortis ...............................5

    C.  Bortis's Failure to Comply with the SEC's Subpoena.........................6

III. ARGUMENT........................................................................................................7

    A.  This Court Has Jurisdiction to Enforce the SEC's Subpoena in a Summary Proceeding ..........................................................................7

        1.  The Court's statutory authority to enforce an SEC subpoena ...7

        2.  The Court may adjudicate the SEC's application in a summary proceeding..................................................................................8

    B.  This Court Should Exercise Its Authority to Enforce the SEC's Subpoena .............................................................................................9

    C.  Bortis Has No Legitimate Justification for Her Failure to Comply...12

IV.  CONCLUSION .................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*EEOC v. Children's Hosp. Med. Ctr. Of N. Cal.*,
  719 F.2d 1426 (9th Cir. 1983) .................................................................. 10

*EEOC v. Karuk Tribe Hous. Auth.*,
  260 F.3d 1071 (9th Cir. 2001) .................................................................. 10

*EEOC v. St. Regis Paper Co.-Kraft Div.*,
  717 F.2d 1302 (9th Cir. 1983) .................................................................... 8

*Endicott Johnson v. Perkins*,
  317 U.S. 501 (1943) .................................................................................. 10

*Flatt v. SEC*,
  2010 WL 1524328 (S.D. Fla. Apr. 14, 2010) ............................................ 10

*Gewerter v. SEC*,
  2016 WL 4074117 (D. Ariz. July 29, 2016) ............................................. 10

*In re Application to Enforce Admin. Subpoena of the SEC v. Bobby Jones*,
  2013 WL 6536085 (C.D. Cal. Dec. 13, 2013) ............................................ 8

*R.R. Donnelley & Sons*,
  2012 WL 12930953 (C.D. Cal. Oct. 5, 2023) ............................................. 9

*RNR Enters., Inc. v. SEC*,
  122 F.3d 93 (2d Cir. 1997) ......................................................................... 9

*Rosiere v. SEC*,
  2010 WL 489526 (D. Nev. Feb. 5, 2010) ................................................. 10

*Sansend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*,
  878 F.2d 875 (5th Cir. 1989) .................................................................... 10

*SEC v. Blackfoot Bituminous, Inc.*,
  622 F.2d 512 (9th Cir. 1980) ................................................................ 9, 12

*SEC v. Brigadoon Scotch Distrib. Co.*,
  480 F.2d 1047 (2d Cir. 1973) ............................................................... 8, 12

*SEC v. Carebourn Capital, LP*,
  339 F.R.D. 510 (N.D. Ill. 2021) .................................................................. 8

*SEC v. Custodian of Records R.R. Donnelley & Sons Co.*,
  2012 WL 12930953 (C.D. Cal. Oct. 11, 2012) ........................................... 8

*SEC v. Harman Wright Grp.*,
  2018 WL 6102758 (D. Colo. Nov. 21, 2018) ........................................ 9, 10

*SEC v. Howatt*,
  525 F.2d 226 (1st Cir. 1975) .................................................................... 10

| | | |
|---|---|---|
| 1 | *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984) | 9 |
| 2 | *SEC v. McCarthy*, 322 F.3d 650 (9th Cir. 2003) | 8 |
| 3 | *SEC v. OwnZones Media Network, Inc.*, 2020 WL 13311398 (C.D. Cal. Sept. 17, 2020) | 1, 3, 4, 11 |
| 4 | *SEC v. Sprecher*, 594 F.2d 317 (2d Cir. 1979) | 8 |
| 5 | *SEC v. Tajyar*, 2018 WL 6313475 (C.D. Cal. Oct. 15, 2018), adopted by 2018 WL 6308106 (C.D. Cal. Nov. 30, 2018) | 9 |
| 6 | *United States v. Church of Scientology of Cal.*, 520 F.2d 818 (9th Cir. 1975) | 10 |
| 7 | *United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997) | 12 |
| 8 | *United States v. Powell*, 379 U.S. 48 (1964) | 9 |
| 9 | *US EPA v. Alyeska Pipeline Serv. Co.*, 836 F.2d 443 (9th Cir. 1988) | 10 |

**Securities Act of 1933**

Section 19(c) [15 U.S.C. § 77s(c)] ....................................................................9, 12

Section 22(b) [15 U.S.C. § 77v(b)] ......................................................................2, 7

**Securities Exchange Act of 1934**

Section 21(b) [15 U.S.C. § 78u(b)] ....................................................................9, 12

Section 21(c) [15 U.S.C. § 78u(c)] ....................................................................2, 7, 8

**Federal Regulations**

Rule 30-4(a)(1) [17 C.F.R. § 200.30-4(a)(1)] ...........................................................12

Rule 506(b) [[17 C.F.R. § 230.506] ..........................................................................3, 11

## I. INTRODUCTION

The SEC is investigating a potentially fraudulent and unregistered offering of securities by Ateliere Creative Technologies, Inc. ("Ateliere"). Respondent Mariana Bortis, according to bank records, has transferred funds to Ateliere exceeding $8 million, and based on transfer agent records, it appears that Bortis has been selling shares of Ateliere to investors. Bortis's son is Ateliere's senior vice president of operations; he is investors' primary point of contact at the company. In view of this, Bortis appears to be a large-dollar aggregator for a securities offering that is under SEC investigation for antifraud and registration violations.

This apparent course of events is a familiar one. Atelerie's corporate predecessor, OwnZones Media Network, Inc. ("OwnZones"), was sued by the SEC in 2020 for a similar "subinvestor scheme" in which OwnZones sought to evade the registration requirements of the federal securities laws by aggregating dozens of individual investments from unaccredited retail investors, and repackaging them as direct investments by a small number of nominees. On that false pretense, OwnZones claimed that its securities offering was exempt from registration. The SEC disagreed, and filed a civil enforcement action in federal court. *See SEC v. OwnZones Media Network, Inc.*, 2020 WL 13311398, at *1-2 (C.D. Cal. Sept. 17, 2020). In March 2021, this district court entered a final judgment enjoining OwnZones from further violations of the antifraud and registration provisions of the federal securities laws. Just seven months later, OwnZones was acquired by Ateliere.

The SEC staff issued an investigative subpoena to Bortis in February 2025 seeking *inter alia* the production of her communications and agreements with Ateliere, documents relating to any efforts she may have taken to raise capital for the company, financial documentation of any compensation Bortis received from Ateliere, and documents evincing any financial transfers arising from her potential solicitation of Ateliere investors. That February 2025 investigative subpoena also

sought her appearance for sworn testimony. In the five months since, and despite eight separate reach outs and communications with Bortis and/or counsel who contacted the SEC on her behalf, Bortis has failed to respond to the SEC's investigative subpoena. Nor has she advanced any justification – valid or otherwise – for her protracted non-compliance over these five months.

The SEC now seeks an order compelling Bortis to comply with its administrative subpoena in accordance with the statutory authority conferred on this Court by Section 22(b) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77v(b), and Section 21(c) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(c).

## II. STATEMENT OF FACTS

### A. The SEC's Investigation of Ateliere's Securities Offering

#### 1. The SEC's August 19, 2024 formal order of investigation

On August 19, 2024, the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony in an investigation titled, *In the Matter of Ateliere Creative Technologies* (SEC File No. LA-05531) ("Formal Order"). Declaration of Wendy E. Pearson ("Pearson Decl.") at ¶ 4, Exhibit 1. The Formal Order empowers the SEC staff to investigate whether Ateliere – or its officers, employees, affiliates, and/or other persons – have violated or are continuing to violate the antifraud and securities registration provisions of the federal securities laws. *See id.* at §§ I.B, I.C, I.D and II. The Formal Order also designates and authorizes certain SEC staff to issue subpoenas to obtain documents and to take testimony as part of the SEC's investigation. *See id.*

#### 2. The SEC's prior enforcement action against Ateliere's corporate predecessor OwnZones

Ateliere holds itself out as a generative AI media software solutions company that is based in Century City, California. *See* Pearson Decl. at ¶ 7; Exs. 2, 3, 4, and 5. Ateliere was formed in 2021. *See id.* at ¶ 7, Ex. 2. From its creation in 2021 until he

recently stepped down from the role (according to the company), Dan Goman was Ateliere's chief executive officer. *See id.* at ¶ 7, Exs. 6-7. Significantly, Goman was also the chief executive officer and controlling shareholder of OwnZones Media Network, Inc. ("OwnZones"), which Ateliere acquired in October 2021, shortly after Ateliere's corporate formation earlier that year. *See id.* at ¶ 7, Ex. 26 at 321:1-322:8, 342:5-343:20.

OwnZones was an alleged Beverly Hills entertainment technology company. In 2020, however, the SEC sued OwnZones and Goman in a civil enforcement action captioned, *SEC v. OwnZones Media Network, Inc., et al.*, Case No. 20-cv-03108-CJC (JPRx) (C.D. Cal.). The Commission's complaint alleged that when raising $45 million from retail investors, Goman and OwnZones engaged in a "subinvestor" scheme" to evade the Commission's securities registration requirements imposed on companies with more than 35 unaccredited investors. According to the SEC's allegations, to stay under the 35-investor maximum, OwnZones aggregated hundreds of individual investments from unaccredited investors under the names of certain direct investors in purported satisfaction of the safe harbor provision of Rule 506(b) of Regulation D. *See SEC v. OwnZones Media Network, Inc.*, 2020 WL 13311398, at *1-2 (C.D. Cal. Sept. 17, 2020) (denying motion to dismiss). But according to the SEC's complaint, the "subinvestors" paid OwnZones directly for their shares, and because OwnZone's small universe of supposed "direct investors" were mere nominees, the Rule 506(b) safe harbor exemption from registration could not apply. *Id.* In addition to charging registration violations, the SEC's complaint alleged that OwnZones' $45 million securities offering was fraudulent because defendants "told investors about non-existent investment or buy-out offers from major companies, and a pending IPO to attract investments and conjure a sense of urgency to invest." *OwnZones*, 2024 WL 13311398, *1.

OwnZones and Goman settled the SEC's civil injunctive action by consent judgment on March 17, 2021. That final judgment enjoined Goman from violating

Section 5 by engaging, directly or indirectly, in the unregistered offer or sale of securities in the absence of any applicable exemption, and from violating the antifraud provisions of the Exchange Act and Securities Act in the future. *SEC v. OwnZones*, Case No. 20-cv-03108-CJC (JPRx) at Dkt. No. 46, § III (C.D. Cal.).

Seven months later, Ateliere and its chief executive officer Goman acquired OwnZones (again, a company that Goman also controlled). *See* Pearson Decl. at ¶ 7, Ex. 4. As described in more detail below, since spring 2021 Ateliere appears to have raised significant capital from outside investors through an unregistered offering of securities.

### 3. Ateliere's Unregistered and Potentially Fraudulent Securities Offering

The SEC's investigation has uncovered evidence that Ateliere, despite never having registered a securities offering, has received over $60 million in apparent outside investment since its formation in the spring of 2021. *See* Pearson Decl. at ¶ 12; Exhibit 11. On the question of how this capital raise was transacted, the SEC has received allegations that Ateliere is selling stock through third parties. *See, e.g.,* Pearson Decl. at ¶ 15; Ex. 14. It therefore appears that Ateliere, which was headed by Goman until at least recently, may be engaged in a course of conduct similar to OwnZones' "subinvestor scheme." There are other potential similarities between the OwnZones and Ateliere securities offerings. The SEC has likewise received allegations that investors in Ateliere are being told of the imminence of a public offering and/or other transactions that should then allow them to liquidate their Ateliere securities – which are currently illiquid – at significantly increased values. Pearson Decl. at ¶ 16, Ex. 15. In short, Ateliere investors are potentially being led to believe that large returns on their investment are expected soon. All of these allegations merit investigation to determine whether any material misrepresentations have been made to investors or whether investors have been duped by other deceptive means, by whom, and with what degree of scienter and/or negligence, if any.

### 4. Bortis's evident involvement in Ateliere's securities offering

The SEC's investigation has developed information indicating that while Bortis is an investor in Ateliere, she may have further involvement in raising for the company substantial amounts of additional money from other investors. Pearson Decl. at ¶ 15, Ex. 14. Bortis's son is Ateliere's senior vice president of operations. Pearson Decl. at ¶ 13. He appears to be Ateliere's primary point of contact for outside investors. *See, e.g., id.* at ¶ 13, Ex. 12 at 60:12-18. He acted in a similar role when previously employed by OwnZones. *Id.* at ¶ 14, Ex. 13 at 30:24-32:2. Bank records for Ateliere's corporate financial accounts indicate that from July 2021 to October 2024, Ateliere received transfers totaling over $8 million from Bortis. *Id.* at ¶ 17, Ex. 16. And transfer agent records obtained by the SEC – which are probative of the offer, distribution, issuance, purchase, sale, transfer, or delivery of Ateliere's securities – suggest that at least $3 million of the money transferred to Ateliere by Bortis may have been the proceeds of Bortis' sales of Ateliere shares to other investors. *Id.* at ¶ 18, Ex. 17. In fact, it appears that during the time she has been refusing to comply with the SEC subpoena she received, Bortis has continued to sell shares of Ateliere. Between March 15, 2025 and April 3, 2025, it appears she transferred at least 2 million Ateliere shares to another investor. Pearson Decl. at ¶ 19, Ex. 18.

Consequently, Bortis may have information relevant to whether Ateliere has been engaging in an unlawful unregistered securities offering and whether materially false information is being provided to Ateliere's ultimate investors. The SEC staff thus issued a February 5, 2025 investigative subpoena to Bortis to further ascertain the precise facts and circumstances of her involvement with Ateliere.

### B. The SEC's February 5, 2025 Subpoena to Bortis

The SEC's February 5, 2025 subpoena to Bortis required her to produce certain documents within her possession, custody, or control by February 20, 2025. *Id.* at ¶ 20, Ex. 19. The subpoena's document requests seek, in relevant part: (i) Bortis's

communications and agreements with Ateliere; (ii) documents concerning her efforts to raise capital for Ateliere; (iii) documents relating to any compensation she received from Ateliere; and (iv) documents evincing any financial transfers arising from her solicitation of investors for Ateliere. *Id.* The SEC's February 5 subpoena also called for her sworn testimony before the SEC in March 2025. *Id.*

### C.     Bortis's Failure to Comply with the SEC's Subpoena

Over the next five months, and despite eight separate reach outs and communications with Bortis and/or counsel who had contacted the SEC on her behalf, Bortis has not responded to the SEC's February subpoena in any meaningful respect:

- On February 20, 2025, Ateliere counsel informed the SEC staff that Bortis had received the subpoena and planned to engage counsel. *Id.* at ¶ 21.
- On February 24, 2025, the SEC staff followed up with Ateliere's counsel and was advised that Bortis was still in the process of engaging counsel. *Id.* at ¶ 22, Ex. 20.
- On February 27, 2025, the SEC staff followed up again. Ateliere counsel had no meaningful update or information to convey. *Id.* at ¶ 23, Ex. 21.
- On March 10, 2025, an attorney who has represented other individuals that have engaged in sales of Ateliere securities (and who have responded to the SEC's subpoenas) indicated to the SEC staff that she would likely be representing Bortis. The attorney told the SEC staff that Bortis was getting married on March 22, 2025. *Id.* at ¶ 24, Ex. 22.
- On April 15, 2025, the attorney told the SEC staff that she would not be representing Bortis and said that Bortis had not returned her emails. Since then, no other counsel has contacted the SEC on Bortis's behalf. *Id.* at ¶ 25, Ex. 23.
- On April 15, 2025, the SEC staff placed a call to what was understood to be Bortis' mobile phone. Bortis did not answer that call and her mailbox was

full which prevented the SEC staff from leaving a voicemail message. *Id.* at ¶ 26.

- On <u>April 30, 2025</u>, the SEC staff again called Bortis' mobile phone number, without success. *Id.* at ¶ 27.

- On <u>June 5, 2025</u>, the SEC staff sent Bortis a letter via UPS overnight mail which included a final document production deadline of June 13, 2025, and a testimony date of June 24, 2025, and informed Bortis that the Commission could seek to enforce the subpoena in federal court if she did not comply. *Id.* at ¶ 28, Exs. 24 and 25.

- As of this date, Bortis has not produced any documents, appeared for testimony, nor has she contacted the SEC staff. *Id.* at ¶ 29.

### III. ARGUMENT

In accordance with the federal securities laws, this Court has jurisdiction to enforce the SEC's subpoena to Bortis in a summary proceeding. *See* Argument, *infra* at III.A. Because the SEC's investigation is conducted for a legitimate purpose, because its subpoena seeks information that might be relevant to that purpose, because the SEC does not have the subpoenaed information in its current possession, and because the Commission has taken all required administrative steps, this Court should enforce the subpoena. *See id.* at III.B. Finally, Bortis has no valid basis for her failure to comply. *See id.* at III.C. Thus, as discussed in further detail below, the SEC respectfully requests that this Court exercise its statutory authority and grant the application at bar.

    **A.   This Court Has Jurisdiction to Enforce the SEC's Subpoena in a Summary Proceeding**

        **1.   The Court's statutory authority to enforce an SEC subpoena**

The federal securities laws authorize the SEC to seek a federal court order compelling compliance with its subpoena. 15 U.S.C. §§ 77v(b) (Securities Act's subpoena enforcement provision) and 78u(c) (Exchange Act's subpoena enforcement

provision). District courts have statutory jurisdiction over SEC subpoena enforcement actions. *Id.* Statutory subpoena enforcement actions may be brought by the SEC in any federal court "within the jurisdiction of which such investigation or proceeding is carried on." *See, e.g.*, 15 U.S.C. § 78u(c). This Court therefore "has jurisdiction over the instant subpoena enforcement action because the [SEC]'s Los Angeles Regional Office is conducting this investigation." *SEC v. Custodian of Records R.R. Donnelley & Sons Co.*, 2012 WL 12930953, at *1 (C.D. Cal. Oct. 11, 2012); *see also In re Application to Enforce Admin. Subpoena of the SEC v. Bobby Jones*, 2013 WL 6536085, at *2 (C.D. Cal. Dec. 13, 2013) (denying motion to change venue in subpoena enforcement action); *SEC v. Carebourn Capital, LP*, 339 F.R.D. 510, 514 (N.D. Ill. 2021) (where investigation was conducted by SEC's Chicago office, venue lies in Northern District of Illinois).

## 2. The Court may adjudicate the SEC's application in a summary proceeding

Further, the Court may grant an application to enforce SEC subpoenas in a summary proceeding. *EEOC v. St. Regis Paper Co.-Kraft Div.*, 717 F.2d 1302, 1304 (9th Cir. 1983) ("[a] subpoena enforcement action is a summary procedure" with no discovery absent "exceptional circumstances"); *see also SEC v. McCarthy*, 322 F.3d 650, 655-59 (9th Cir. 2003) (court may enforce SEC subpoena in summary proceeding "upon application from the Commission"); *SEC v. Sprecher*, 594 F.2d 317, 319-20 (2d Cir. 1979) (courts may enforce a subpoena in summary proceeding "upon application by the Commission"). Summary procedures are appropriate because the SEC "must be free without undue interference or delay to conduct an investigation which will adequately develop a factual basis for a determination as to whether particular activities come within the Commission's regulatory authority." *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1053 (2d Cir. 1973).

### B. This Court Should Exercise Its Authority to Enforce the SEC's Subpoena

SEC subpoenas should be judicially enforced when: (1) the "investigation will be conducted pursuant to a legitimate purpose," (2) the subpoenas seek information that "may be relevant to the purpose," (3) "the information sought is not already within the [SEC's] possession," and (4) all "administrative steps required…have been followed." *United States v. Powell*, 379 U.S. 48, 57-58 (1964) (enforcing IRS subpoena); *SEC v. Blackfoot Bituminous, Inc.*, 622 F.2d 512, 513-14 (9th Cir. 1980) (applying analogous factors in summary proceeding to enforce SEC investigative subpoena). Courts have routinely granted relief in SEC subpoena enforcement proceedings upon this requisite showing. *See R.R. Donnelley & Sons*, 2012 WL 12930953 (applying *Powell* factors); *SEC v. Tajyar*, 2018 WL 6313475 (C.D. Cal. Oct. 15, 2018) (Rozella, Mag. J.) (same), adopted by 2018 WL 6308106 (C.D. Cal. Nov. 30, 2018).

The required showing is a "slight one" that may be satisfied by an affidavit from a government official. *See RNR Enters., Inc. v. SEC*, 122 F.3d 93, 97 (2d Cir. 1997); *see also SEC v. Harman Wright Grp.*, 2018 WL 6102758, at *2 (D. Colo. Nov. 21, 2018) (SEC's burden is a "slight one" generally satisfied by an affidavit from the agent seeking enforcement). In this case, all of the requirements are met.

*First*, the SEC's investigation is being conducted pursuant to a lawfully authorized and legitimate purpose. "The provisions vesting the SEC with power to issue and seek enforcement of subpoenas are expansive." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 743 (1984). Congress gave the SEC broad authority to conduct investigations and to demand the production of evidence relevant to such investigations. *Id*. at 741. This authority includes the power to "subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry." 15 U.S.C. § 78u(b); *see also* 15 U.S.C. § 77s(c).

Here, by issuing the Formal Order, the SEC authorized its staff to investigate whether Ateliere has violated or is continuing to violate the antifraud and registration provisions of the federal securities laws. Pearson Decl. ¶ 4, Ex. 1. The SEC's investigation and the February 5, 2025 subpoena served on Bortis, a potential "aggregator" for Ateliere's securities offering, is within the scope of the Formal Order and the SEC's authorized law-enforcement powers.

*Second*, the information sought by the subpoenas is relevant to the SEC's investigation. In SEC investigations, "the notion of relevancy is a broad one. An agency can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not. So long as the material requested touches a matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant." *Flatt v. SEC*, 2010 WL 1524328, at *5 (S.D. Fla. Apr. 14, 2010) (quoting *Sansend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989)); *see also Rosiere v. SEC*, 2010 WL 489526, at *3 (D. Nev. Feb. 5, 2010); *Gewerter v. SEC*, 2016 WL 4074117, at *2 (D. Ariz. July 29, 2016).

As the Ninth Circuit has recognized: "'[t]he scope of the judicial inquiry in an … agency subpoena enforcement proceeding is quite narrow.'" *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001) (quoting *EEOC v. Children's Hosp. Med. Ctr. Of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc)). Thus, a court must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency. *Karuk Tribe Housing Auth.*, 260 F.3d at 1076; *see also Endicott Johnson v. Perkins*, 317 U.S. 501, 509 (1943); *Administrator, US EPA v. Alyeska Pipeline Serv. Co.*, 836 F.2d 443, 447 (9th Cir. 1988); *Harman Wright Group*, 2018 WL 6102758, at *2. The SEC need not make out a "probable" or "reasonable" cause showing when subpoenaing documents. *SEC v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975); *see also United States v. Church of Scientology of Cal.*, 520 F.2d 818, 821 (9th Cir. 1975) (federal agency "need not meet

any standard of probable cause to obtain enforcement of its summons").

The minimal relevance required to enforce the SEC's February 5, 2025 subpoena to Bortis is easily satisfied here. Ateliere was formed in 2021, and in short order, it acquired OwnZones, an issuer that the SEC had sued in 2020, alleging *inter alia* that OwnZones had engaged in a fraudulent "subinvestor scheme." To evade the Commission's securities registration requirements imposed on companies with more than 35 unaccredited investors, OwnZones used a small universe of supposed "direct investors" to purportedly meet the safe harbor provision of Rule 506(b) of Regulation D, when in truth, those "direct investors" had simply aggregated individual investments from unaccredited investors. *See OwnZones*, 2020 WL 13311398, at *1-2. Here, bank and transfer agent records suggest that Ateliere may be engaging in a similar scheme and that Bortis – whose adult son was previously employed by OwnZones and is now Ateliere's investor relations executive – is involved in a parallel course of events.

Documentary evidence indicates that Bortis may have raised more than $8 million from up to a dozen other investors in Ateliere. And so, to determine the precise nature of Bortis's relationship with Ateliere and whether she has engaged in, participated with, or otherwise facilitated a "subinvestor scheme" akin to the alleged fraud in *OwnZones*, the SEC's February 5, 2025 subpoena seeks production of documents relating to her communications and agreements with Ateliere, her efforts if any to raise capital for Ateliere, any compensation she may have received from Ateliere, and to the extent she has participated in soliciting outside investment in Ateliere, any financial transfers arising from that course of conduct. Apart from documentary evidence, the SEC's subpoena further seeks Bortis's testimony, at which time she may give her sworn account of the relevant facts and circumstances. Because the information sought by the SEC's subpoena is relevant to its investigation, the second *Powell* factor is satisfied here.

*Third*, the information sought is not in the SEC's possession. Significantly, the

SEC's subpoena seeks her sworn testimony because no one is better-positioned to explain the millions of dollars flowing through Bortis' personal bank account to Ateliere than Bortis herself.

*Fourth*, and finally, the SEC has satisfied all of the administrative prerequisites. The federal securities laws authorize the SEC to compel the attendance of witnesses and require the production of any books, papers, or other documents that the SEC considers relevant or material to its investigation. *See* 15 U.S.C. §§ 77s(c), 78u(b), & 80b-9(b). The SEC's subpoenas were issued pursuant to a Formal Order and signed by an SEC attorney designated by the Formal Order to issue subpoenas. *See* 17 C.F.R. § 200.30-4(a)(1).

***

Accordingly, the SEC has proven the four requisite *Powell* factors, and this Court should enforce its investigative subpoena to Bortis.

### C. Bortis Has No Legitimate Justification for Her Failure to Comply

Because the SEC has established that its subpoenas were lawfully issued, the burden shifts to Bortis to establish an affirmative defense for not complying with the subpoenas. Bortis bears a heavy burden when "the agency inquiry is authorized by law and the materials sought are relevant to the inquiry." *Brigadoon Scotch Dist. Co.*, 480 F.2d at 1056; *see also United States v. Jose*, 131 F.3d 1325, 1328 (9th Cir. 1997) (after *prima facie* case made to enforce investigative summons, heavy burden fell on respondent); *Blackfoot Bituminous*, 622 F.2d at 515 (respondent has burden of showing defense to enforcement).

The SEC issued its subpoena to Bortis in February. In the ensuing five months, Bortis has not asserted any justification for her failure to comply with its subpoena. An attorney that she never retained communicated to the SEC that Bortis was due to wed in March; that excuse is now aged and unavailing. And ever since that attorney confirmed to the SEC that she was not being hired by Bortis, the SEC's multiple attempts to directly engage with Bortis on its outstanding subpoena have been met by

her sustained silence. Bortis has no basis for her refusal to comply with the SEC's February 5, 2025 subpoena.

## IV. CONCLUSION

For these reasons, the application should be granted and the Court should issue: (i) an order, in the form submitted, requiring Bortis to show cause why she should not be ordered to comply with the February 5, 2025 subpoena; (ii) if Bortis fails to show adequate cause to support her refusal to comply with the subpoena, an order requiring her to comply immediately with the subpoena to produce all responsive documents and appear for investigative testimony; and (iii) any other relief that may be necessary and appropriate to achieve compliance with the subpoena.

Dated: August 18, 2025

                              */s/ Gary Y. Leung*
                              GARY Y. LEUNG
                              Attorney for Plaintiff
                              Securities and Exchange Commission

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On August 18, 2025, I caused to be served the document entitled **SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS APPLICATION FOR AN ORDER TO SHOW CAUSE AND APPLICATION FOR AN ORDER COMPELLING COMPLIANCE WITH ADMINISTRATIVE SUBPOENA** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☒ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☒ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☐ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: August 18, 2025          */s/ Gary Y. Leung*
                               GARY Y. LEUNG

1

*SEC v. Bortis*
United States District Court—Central District of California

**SERVICE LIST**

MARIANA BORTIS
11280 E PALOMINO RD
SCOTTSDALE, AZ 85259-5889

MARIANA BORTIS
5350 W. BELL RD, STE. 122
GLENDALE, AZ 85308-3907

2